**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41578**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 29S** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: June 14, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ROBERT BENJAMIN BRACKETT,** | ) | **SUBSTITUTE OPINION** |
| | ) | **THE COURT'S PRIOR OPINION** |
| Defendant-Appellant. | ) | **DATED APRIL 27, 2016, IS** |
| | ) | **HEREBY WITHDRAWN** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Michael R. Crabtree, District Judge.

Judgment of conviction for eight counts of possession of sexually exploitative material and five counts of sexual battery on a minor child of sixteen or seventeen, affirmed.

Sara B. Thomas, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Robert Benjamin Brackett appeals from his judgment of conviction for eight counts of possession of sexually exploitative material and five counts of sexual battery on a minor child of sixteen or seventeen. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In January 2011, a minor reported to authorities that she had a sexual relationship with forty-six-year-old Brackett. At the time of the relationship, the minor was sixteen years old. Officers recovered a camera containing many sexually explicit photos of the minor, which the

minor claimed were taken by Brackett and some of which depicted her having sexual contact with Brackett. Brackett was charged with eight counts of possession of sexually exploitive materials, I.C. § 18-1507A, and eight counts of sexual battery on a minor child of sixteen or seventeen, I.C. § 18-1508A. Brackett's first trial ended in a mistrial after Brackett, during his opening statement, violated the district court's pretrial order. After his second trial, Brackett was found guilty by a jury of eight counts of possession of sexually exploitive materials and five counts of sexual battery on a minor child of sixteen or seventeen. Brackett appeals.

## II.

## ANALYSIS

### A. Right to a Speedy Trial

Brackett argues that the district court erred in denying his motions to dismiss for violating his right to a speedy trial under the Idaho and United States Constitutions. Whether there was an infringement of a defendant's right to speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id.*

Both the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho Constitution guarantee to criminal defendants the right to a speedy trial. *State v. Lopez*, 144 Idaho 349, 352, 160 P.3d 1284, 1287 (Ct. App. 2007). The speedy trial guarantees are designed to minimize the possibility of lengthy incarceration prior to trial; to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail; and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. *United States v. Loud Hawk*, 474 U.S. 302, 311 (1986); *United States v. MacDonald*, 456 U.S. 1, 8 (1982).

When analyzing claims of speedy trial violations under the state and federal constitutions, the Idaho appellate courts utilize the four-part balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001); *Lopez*, 144 Idaho at 352, 160 P.3d at 1288; *State v. Avila*, 143 Idaho 849, 853, 153 P.3d 1195, 1199 (Ct. App. 2006). The factors to be considered are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy

trial; and (4) the prejudice occasioned by the delay. *Barker*, 407 U.S. at 530. None of the four *Barker* factors is, by itself, "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Moore v. Arizona*, 414 U.S. 25, 26 (1973). If the reason for the delay is sufficient, these factors are not needed; if the reason for the delay is insufficient, the other factors will not avail to avoid dismissal. *Clark*, 135 Idaho at 260, 16 P.3d at 936.

1.      **Length of delay**

The first factor, the length of the delay, is initially a triggering mechanism. *Young*, 136 Idaho at 117, 29 P.3d at 953. Until there is some delay which is presumptively prejudicial, it is unnecessary to inquire into the other three factors. *Id.* Under the Sixth Amendment, the period of delay is measured from the date there is a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Young*, 136 Idaho at 117, 29 P.3d at 953. The Idaho Supreme Court has held that, for cases prosecuted in state courts, the filing of a complaint constitutes a formal charge that begins the time computation for Sixth Amendment purposes. *Young*, 136 Idaho at 117, 29 P.3d at 953. Similarly, under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *Id.*

Brackett was in custody on charges related to his relationship with the minor between his January 14, 2011, arrest and his January 29, 2013, second trial--more than twenty-four months. The threshold issue for this Court is what portion of the twenty-four months should be used for purposes of the *Barker* analysis. Brackett argues that the entire twenty-four months, including the time between a mistrial and his second trial, should be considered. The state argues that only the twenty-one months between Brackett's arrest and mistrial should be considered, especially because Brackett's actions during the first trial resulted in the mistrial.

Appellate courts throughout the United States have split on whether to consider the time between the individual's arrest and second trial as one combined period of time or as two separate periods of time before and after the first trial ended in a mistrial. The Idaho appellate courts have not determined which of these two approaches to utilize in Idaho. This Court holds that, for purposes of the *Barker* analysis, the combined period from when an individual is charged or arrested until his or her final trial--the trial that results in a disposition--is the proper period to be considered. We acknowledge the merit of the state's argument that the period

3

between the mistrial and final trial should not be considered, especially when the defendant is the cause of the mistrial. However, rather than disregarding the period while performing the *Barker* analysis, the period of time should be considered and the defendant's cause of the additional delay will weigh against the defendant in the second prong of the *Barker* analysis. Accordingly, this Court will consider the entire twenty-four months between Brackett's arrest and his final trial.

*Barker*'s four-part speedy trial test creates no bright-line boundaries. Rather, the United States Supreme Court stated that, because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is necessarily dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S. at 530-31. The nature of the case is also of import in determining the period of delay that can be tolerated because the period that is reasonable for prosecution of an ordinary street crime is considerably less than for a complex conspiracy charge. *Barker*, 407 U.S. at 531; *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005); *State v. McNew*, 131 Idaho 268, 272, 954 P.2d 686, 690 (Ct. App. 1998).

The Idaho Supreme Court has held that a delay of fourteen months in a drug delivery case was sufficient to trigger a constitutional speedy trial inquiry. *State v. Lindsay*, 96 Idaho 474, 476, 531 P.2d 236, 238 (1975). This Court has held that a delay of one year in a robbery case was presumptively prejudicial, triggering a speedy trial inquiry. *State v. Campbell*, 104 Idaho 705, 708, 662 P.2d 1149, 1152 (Ct. App. 1983). This Court has also held that a delay of over thirteen months in a complex conspiracy case was sufficient to trigger analysis. *State v. Rodriquez-Perez*, 129 Idaho 29, 34, 921 P.2d 206, 211 (Ct. App. 1996). The nature of the charges Brackett was facing, eight counts of sexual battery on a minor child of sixteen or seventeen and eight counts of possession of sexually exploitive materials, all stemmed from Brackett's relationship with one minor, over approximately four months. These facts are more complex than an ordinary street crime, but are far less than a complex conspiracy charge. Accordingly, here, the twenty-four-month delay (eleven months longer than was found sufficient to trigger inquiry in a complex conspiracy) was sufficient to trigger inquiry into whether Brackett's constitutional speedy trial rights were violated.

4

Once the balancing test is triggered, the length of the delay also becomes a factor in the balancing itself. *Avila*, 143 Idaho at 853, 153 P.3d at 1199. This Court ascribes heavy weight to the delay. A delay of twenty-four months, while Brackett remained in custody, is unreasonable. The record on appeal shows no difficulty with complexity of investigation, trouble collecting evidence, or any other mitigating circumstance justifying the delay. The length of delay, therefore, weighs in favor of Brackett in balancing the speedy trial factors.

### 2.    Reason for delay

Brackett admits that portions of the twenty-four-month delay are attributable to him and, therefore, weigh against him. However, Brackett contends that, as a whole, the reason for the delay is neutral--neither attributable to him nor the state. The state, on the other hand, contends that the delay is largely attributable to Brackett and weighs heavily against him.

Brackett admits that a portion of the delay between January 2011 and September 2011 is attributable to him, though he does not specify what portion. During that period, Brackett had five court-appointed attorneys, all whom withdrew from Brackett's representation. Between January 2011 and April 2011, the first three attorneys withdrew due to conflicts of interest. These conflicts are not attributable to Brackett. However, between May 2011 and October 2011, Brackett's next two attorneys withdrew from representation as a result of Brackett's uncooperative behavior. This six-month delay is attributable to Brackett.

The period from October 2011 until March 2012 is attributable to neither party. During that period, a number of motions were filed, hearings were held, and the case against Brackett was progressing reasonably.

The period from March 2012 until October 2012 (approximately eight months) is largely attributable to Brackett. On the day scheduled for Brackett's original trial, Brackett filed a motion to represent himself, which was granted. In order to allow Bracket to prepare to represent himself at trial, the district court granted Brackett's motions for continuances.

Finally, the three months from October 2012 until January 2013 is attributable to Brackett. Due to his failure to follow the district court's pretrial orders, the district court ordered a mistrial and reset the trial for January 29, 2013.

Viewing the twenty-four-month period as a whole, it is clear that a significant portion of the delay--at least fifteen months--is attributable to Brackett. Brackett's frequent changes in

5

counsel, culminating with his motion to represent himself, were largely the cause of delay in his case. Accordingly, this *Barker* factor, the reason for delay, weighs against Brackett in our analysis.

### 3.      Assertion of speedy trial right

Both parties recognize that Brackett frequently asserted his constitutional speedy trial right and moved for dismissal of the charges on those grounds. The more serious the deprivation, the more likely a defendant is to complain. *Barker*, 407 U.S. at 531. The defendant's assertion of his or her speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Id*. at 531-32. Accordingly, Brackett's repeated assertion of his speedy trial right weighs in his favor.

### 4.      Prejudice

The fourth factor in the *Barker* analysis is prejudice to the accused caused by the delay. The nature and extent of prejudice is the most important of the *Barker* factors. *McNew*, 131 Idaho at 273, 954 P.2d at 691. Prejudice is to be assessed in light of the interests that the right to a speedy trial is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Young*, 136 Idaho at 118, 29 P.3d at 954. The third of these is the most significant because a hindrance to adequate preparation of the defense "skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *State v. Hernandez*, 133 Idaho 576, 583, 990 P.2d 742, 749 (Ct. App. 1999).

Prior to the first trial, Brackett filed a motion arguing that the case must be dismissed because his speedy trial right was violated. At the hearing on that motion, the state explained:

> I just would like the court to know that the state is stipulating to the motion at this time. We believe that the pendency of this case and the hearing that we had in August clearly show that there's been prejudice to [Brackett] of the presentation of his case at this time and that prejudice goes towards his right to a speedy trial issue as well.

The remainder of that hearing focused on whether the case should be dismissed with prejudice or without prejudice. Based upon the state's stipulation, Brackett's case was dismissed without prejudice. The state then recharged Brackett.

6

Based upon the state's concession in September 2011, this Court holds that Brackett was prejudiced by the delay between January 2011 and September 2011. If Brackett was prejudiced in September 2011, it stands to reason the additional fifteen-month-delay that followed added to the prejudice Brackett suffered. In addition, on March 27, 2012, during a bond reduction hearing, Brackett notified the district court that he had been impaired in his defense because his roommate at the time of the relationship with the minor had died. The state argues that the death of a potential witness does not prove prejudice because it is unknown what the unavailable witness would have said regarding Brackett's relationship. We agree that there is no way of knowing whether the witness would have strengthened Brackett's defense but disagree with the state's conclusion. Because the witness is unavailable and his testimony is unknown, Brackett is prejudiced by the delay. As the Supreme Court in *Barker* explained, if a witness dies during a delay, the prejudice is obvious. *Barker*, 407 U.S. at 532. The state's admission that Bracket was prejudiced by the delay between January 2011 and September 2011, coupled with the death of a potential defense witness, leads this Court to conclude that Brackett was prejudiced by the twenty-four-month delay between his arrest and trial.

### 5. Balancing

In this case, three of the four *Barker* factors--length of delay, assertion of speedy trial right, and prejudice--weigh in Brackett's favor in proving his speedy trial right was violated. On the other hand, one factor--the reason for the delay--weighs heavily against Brackett. Few would disagree that twenty-four months is a lengthy time awaiting trial. In addition, few would deny that the death of a potential defense witness is a serious prejudice. Both of these factors weigh heavily in Brackett's favor in his effort to prove that his right to a speedy trial was violated. However, the delay was largely of Brackett's own making. As outlined above, at least fifteen months of the delay is attributed to Brackett's inability to work with his appointed counsel, necessitating multiple changes in counsel and multiple continuances in order for new counsel to become acquainted with Brackett's case. That leaves a delay of between nine and ten months that is attributable to the state, which is not an unreasonable delay for a case involving sixteen felony charges. We hold that Brackett's right to a speedy trial was not violated by the long delay when much of the delay was the result of Brackett's own actions.

7

**B.      Motion for a Mistrial**

Brackett alleges that the district court abused its discretion when it declared a mistrial over his objection.  In criminal cases, motions for mistrial are governed by I.C.R. 29.1.  A mistrial may be declared upon motion of the state, when there occurs during the trial misconduct by the defendant resulting in substantial prejudice to the state's case.  I.C.R. 29.1(b).  Due to the defendant's valued right to have his or her case decided by the seated jury, appellate courts have an obligation to satisfy themselves that a trial judge exercised sound discretion in declaring a mistrial; thus, if a trial judge acts irrationally or irresponsibly, the mistrial declaration cannot be condoned.  *State v. Manley*, 142 Idaho 338, 344-45, 127 P.3d 954, 960-61 (2005).  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine:  (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason.  *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Brackett represented himself at his first trial.  Prior to the trial, the district court granted the state's motion in limine, ruling that allegations that the district court had violated Brackett's rights were inadmissible and were not to be mentioned at trial.  In addition, the district court ruled that evidence regarding prior bad acts of the victim or any other witness was inadmissible.  During opening argument, Brackett stated that there "must be, with over the potential eight life sentences being faced by [Brackett], a solid chain of custody, a standard of operating procedure, but, most of all, fairness and truth for the story to be told."  Additionally, Brackett stated:

> A guy walks into a bar, and he sees someone.  What does he think?  He thinks that person's of age.  Again, he walks into a different club, sees the same person.  What does he think?  He thinks that person's of age.  He sees that person's I.D., and it says they're of age.  What does he think?  He knows they're of age.

Brackett also stated:

> [W]itnesses for the state are allowed to make changes of their stories, even lie at time and, "oops, that was a mistake I made."  What we want you to say and what we--"just say what we want you to say, and we can make all your troubles go away."

8

The state moved for a mistrial, alleging that the state's case was substantially prejudiced by Brackett's statements. Bracket objected to the state's motion, arguing that a jury instruction could cure the prejudice suffered by the state. After taking a recess to review the law and draft a potential curative instruction, the district court heard additional argument from Brackett and the state. The district court explained that "the comment on the punishment goes straight to the court's previous admonition to the jury in instruction number 5."[1] The district court further stated that there was simply no excuse, intentional or otherwise, for the comment made by Brackett. While Brackett's comment was, "in part, meant to express Brackett's maintenance of his innocence, . . . it was clearly designed to appeal to the sympathies of the jury and to--the members of the jury and to attempt to persuade them through that fashion right from the very beginning." The district court discussed instructing the jury to disregard Brackett's statements and concluded that, "as a matter of discretion, I'm not convinced that the proposed instruction that I have presented to you all would actually cure the prejudice that's occurred to the state, and the prejudice is substantial." Accordingly, the district court granted the state's motion for a mistrial.

Brackett asserts that the district court abused its discretion when it declared a mistrial over his objection. Specifically, Brackett alleges that the law requires a district court to consider available alternatives prior to declaring a mistrial and that the district court failed to do so. The Idaho Supreme Court has explained that a judgment for a mistrial may be set aside if the reviewing court finds that the judge has abused its discretionary power, particularly where it appears that the judge has not scrupulously exercised his or her discretion by making a full inquiry into all the pertinent circumstances and deliberately considering the options available. *Manley*, 142 Idaho at 344, 127 P.3d at 960.

Here, the record is clear that Brackett's comments tainted the jury, prejudicing the state's case. The district court took a recess to consider the motion for a mistrial and draft a potential curative instruction. After hearing argument from Brackett and the state, the district court

---

[1] After empaneling the jury, the district court instructed the jury: "Do not concern yourself with the subject of penalty or punishment. That subject must not in any way affect your verdict. If you find [Brackett] guilty, it will be my duty to determine the appropriate penalty or punishment."

9

considered the context of Brackett's comments and the resulting prejudice to the state's case. The district court considered the only reasonable alternative to cure the taint--instructing the jury to disregard Brackett's comments. However, the district court ultimately determined that the prejudice to the state was too much to be overcome by use of a curative instruction. The United States Supreme Court has held that the trial court's determination to declare a mistrial is entitled to special respect where the trial court ordered a mistrial because the defendant's lawyer made improper and prejudicial remarks during his opening statement to the jury. *Arizona v. Washington*, 434 U.S. 497, 510 (1978). Neither party has a right to have a case decided by a jury which may be tainted by bias; in these circumstances, the public's interest in fair trials designed to end in just judgements must prevail over the defendant's valued right to have a trial concluded before the first jury impaneled. *Id*. at 516. Accordingly, we hold that the district court did not abuse its discretion in declaring a mistrial based upon its finding that the state's case was prejudiced by Brackett's comments and that the available remedy was inadequate to remove the taint from the jury.

## C.     Access to Evidence

Brackett alleges that the district court erred in denying his requests for access to evidence. After Brackett's arrest, his residence was searched and an SD memory card, which had been erased, was seized. A detective copied the contents of the SD card to his computer and used specialized software to recover at least 269 images. The detective prepared a forensic report of his analysis of the SD card, which included all of the images that were recovered from the SD card. Brackett alleges that the district court violated his due process rights when it denied him access to the original SD card, a copy of the SD card, and the forensic report during the period between a mistrial and Brackett's second trial.

The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions comport with prevailing notions of fundamental fairness. Fundamental fairness requires a meaningful opportunity to present a complete defense, which includes constitutionally guaranteed access to evidence. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23

10

P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found. *Id.*

Idaho Criminal Rule 16(b)(4)[2] provides that, upon written request of the defendant, the prosecuting attorney shall permit the defendant to inspect and copy physical materials which are in the possession of the prosecuting attorney where the materials were obtained from or belonged to the defendant. Idaho Criminal Rule 16(b)(5) provides that, upon request of the defendant, the prosecuting attorney shall permit the defendant to inspect and copy results of examinations or tests conducted in connection with the particular case, where the examinations and tests are known or are available to the prosecuting attorney.

Rule 16(m) provides:

> (1) Any property or material that constitutes or is alleged to constitute sexually exploitative material as defined in I.C. § 18-1505B or I.C. § 18-1507 shall remain in the care[,] custody, and control of either the court or a law enforcement agency.
> (2) A court shall deny any request by a defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes or is alleged to constitute sexually exploitative material as defined in I.C. § 18-1505B or I.C. § 18-1507, so long as the state makes the property or material reasonably available to the defendant.
> (3) For purposes of subsection (m)(2) of this rule, property or material shall be deemed to be reasonably available to the defendant if the state provides ampl[e] opportunity for inspection, viewing, and examination of the property or material by the defendant, defense counsel and any individual the defendant may seek to qualify to furnish expert testimony at trial.

Prior to his first trial, Brackett was incarcerated in the Twin Falls County Jail. The images of the minor were contained on the original SD card and in the forensic report, both of which were held under seal at the Twin Falls County Courthouse. Prior to his first trial, Brackett had physical access to the original SD card and the forensic report. Shortly after Brackett's first trial ended in a mistrial, he was transferred to the jail in Blaine County. Brackett then filed a Rule 16 motion to transfer the original SD card and forensic report to Blaine County so he could access the evidence in preparation for his second trial. The district court ruled:

---

[2] Rule 16 has been amended to provide direction on the production of digital medial recordings. However, that section was not in effect at the time of Brackett's discovery requests.

To the extent [Brackett] is requesting access to certain evidence kept under seal at the Twin Falls County Courthouse, [Brackett] has had ample opportunity to view the evidence at issue and to prepare for trial. Further, [Brackett] indicated that he was prepared to proceed with [his first] trial on October 29, 2012. Idaho Criminal Rule 47 provides that a motion "shall state the grounds upon which the motion is made and shall set forth the relief or order sought." [Brackett] has not provided any statute, procedural rule, or case law that would require the court to permit [Brackett's] continued access to the evidence at issue where the case was ready to proceed with trial but was only continued to a new date due to misconduct on the part of [Brackett]. The motions set forth above are denied on this basis.

The issue here is whether the district court erred in denying Brackett continued access to the original SD card and forensic report between his mistrial and second trial. Rule 16(m) provides sexually exploitive material must remain in the care, custody, and control of the court or a law enforcement agency and that a court shall deny any request to reproduce any sexually exploitive material. Accordingly, the district court did not err in denying Brackett's request for a copy of the SD card or forensic report, which contained sexually exploitive materials.

Brackett alleges he was denied access to evidence because he was not allowed to access the exact copy of the SD card, which the detective created to analyze with specialized software. Analogizing, Brackett argues that, because a drug defendant has a right to have an independent chemist review the contraband in the presence of a representative of the state to determine the chemical makeup, the same is true for sex crimes. Specifically, Brackett argues that he was entitled to have an independent expert access and analyze the SD card's contents. It is uncontested that under Rule 16(m)(3) an individual who Brackett might seek to qualify as an expert, such as an independent analyst, was entitled to access the SD card had Brackett moved the court to allow an expert access to the evidence. However, Brackett did not make such a request. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Accordingly, this claim is not preserved for appeal.

Finally, Brackett alleges that he was denied access to evidence when the district court denied his motion to have the original SD card and forensic report transferred to Blaine County for Brackett's use in preparing for his second trial. The district court held that Brackett had access to the evidence prior to his first trial and had indicated that he was prepared to proceed to

trial. Accordingly, the district court held that Brackett had a sufficient opportunity to access the evidence and needed no more access in order to prepare for his second trial. Rule 16(m)(3) requires that a defendant have ample opportunity to inspect, view, and examine the property. Assuming, without deciding, that the district court is correct that Brackett had ample opportunity to access the evidence prior to his first trial, Brackett did not have any opportunity, let alone ample opportunity, to access the evidence in preparation for his second trial. Accordingly, the district court erred in denying Brackett access to the evidence during the period between his mistrial and second trial.

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the state has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010). However, where the error in question is a constitutional violation that affects the base structure of the trial to the point that the trial cannot serve its function as a vehicle for the determination of guilt or innocence, the appellate court shall vacate and remand. *Id.* Such structural defects include the complete denial of counsel, a biased trial judge, denial of self-representation, denial of a public trial, defective reasonable doubt instruction, and erroneous deprivation of the right to counsel of choice. *Id*. at 222-23, 245 P.3d at 974-75. Although structural defects require automatic reversal, most constitutional violations will be subject to a harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8 (1999).

With regard to the original SD card, we hold that the district court's erroneous denial of Brackett's motion to access evidence was harmless. Had Brackett been granted access to the original SD card (or even an exact copy of the SD card), there is nothing in the record that suggests Brackett had access to the sophisticated software needed to restore and access the deleted contents. Thus, granting Brackett access to the original SD card or an exact copy thereof

would have been of no benefit to Brackett in preparing his defense for his second trial. Accordingly, the district court's error was harmless.

Further, with regard to the both the original SD card and the forensic report, we hold that the district court's denial of Brackett's motion for access to the evidence was harmless. Brackett had access to the original SD card and forensic report in preparation for his first trial, which ended in a mistrial. Brackett claims that denying him access to the evidence during the three months before the second trial meant that he could not review the images the state alleged to be sexually exploitive as he readied himself for the second trial and impacted his ability to prepare a defense. The images had not changed and allowing Brackett to access and view the images, some of which were images of the victim's genitals, would not have changed whether they were sexually exploitive. Brackett was aware of the images and knew what they depicted, based upon his prior access, sufficient to prepare a defense to whether they were sexually exploitive. Accordingly, the district court's denial of access was harmless error.

## D.     Expert Assistance

In December 2011, the district court appointed an independent district judge or "money judge" to conduct ex parte reviews of Brackett's requests for funding to support expert and investigative assistance. On appeal, Brackett alleges that the money judge abused its discretion in precluding him from making further requests for funds for expert assistance. On December 13, 2011, the money judge ordered Brackett to support requests with two documents: (1) a motion which described the need for the funds, the requested expert's credentials, how travel and other expenses would be measured and billed, and a certification that the expenditure of public funds was appropriate to make available necessary services and facilities of representation; and (2) an accompanying affidavit which contained a specific estimate of the amount of public funds to be expended, a certification that Brackett had pursued the available market for experts, that the requested expert provided the most economic service available in his or her field, and a certification that the expert would provide bills on a monthly basis.

In April 2012, Brackett filed a motion requesting public funds to support expert assistance from a computer forensic expert in California. The money judge authorized Brackett to retain the expert for the upcoming trial and approved funding in the amount of $3,000. In August 2012, Brackett, citing jail phone restrictions, filed a motion requesting the appointment

of a second expert to replace the first as his forensic expert. The money judge issued an order authorizing Brackett to retain the second expert and approved additional funding in the amount of $5,000. Later that month, at a hearing, Brackett told the money judge that the second expert had done "absolutely nothing" on the case and requested that the second expert not be paid. Brackett requested that the money judge appoint a third forensic expert.

Before the money judge could rule on Brackett's new request, the second expert sent a letter to the court disputing Brackett's characterization of the expert's services. The second expert attached a detailed billing invoice which he had previously submitted to the court. This invoice indicated that the second expert had communicated with Brackett's investigator and had obtained and reviewed the defense casefile provided to him by Brackett's first expert. In the accompanying letter, the second expert stated that he had engaged in numerous and extensive telephone conversations with Brackett, but that Brackett repeatedly requested that the second expert travel to Twin Falls immediately to speak with him--an activity that the second expert did not believe would be an efficient use of his resources. The second expert also reported that he had requested relevant Idaho law enforcement authorities to provide "original items of digital evidence for [his] examination," but it was his understanding that Brackett, through his investigator, stopped the investigator's request to have copies of the original evidence transferred for examination. As a result, the second expert stated he had not yet had the opportunity to review the copies of the original digital evidence. However, the second expert explained that he still planned (assuming adequate funding to support an additional forty to sixty hours of billable time) to examine the original evidence, travel to Twin Falls to meet with Brackett, provide Brackett with the results of the examination, write a detailed report about the expert's findings, help prepare Brackett for trial, and request that the court allow him to sit alongside Brackett in presenting his defense. For the remainder of the proceedings in the underlying case, it appears that Brackett made no additional requests for funding for the second expert to complete this work.

On September 5, 2012, the money judge denied Brackett's motions to appoint and fund Brackett's third requested expert. The money judge noted that it was unclear what the second expert was or was not directed to do by Brackett or his investigator. The money judge then concluded in light of the services already provided by the second expert and his willingness and

15

apparent ability to perform additional services, Brackett had failed to make an adequate factual showing for additional funds to retain a new expert. Approximately one week later, Brackett submitted an unsworn affidavit, again requesting that the third expert be funded and appointed to assist his defense. The money judge denied the request. The money judge concluded that, based upon its review, the services completed by the second expert were reasonable. The money judge further held there was no showing that the second expert was unable to provide the expert assistance and services required by Brackett or was otherwise unqualified and that, although Brackett "may have an unsubstantiated lack of confidence" in the second expert, it was "not a legitimate basis to appoint yet another expert." The money judge also noted that it would likely approve additional funding requests for the second expert to continue his work in this case, provided such requests complied with the December 13, 2011, order. At approximately the same time, the second expert sent a sealed declaration to the district court requesting additional funds and stating that he had completed some additional work on Brackett's case for which the money judge had not yet approved funding. The second expert also informed the district court that Brackett no longer wanted him to work on the case. In a subsequent order responding to the second expert's declaration, the money judge reiterated that the second expert remained the appointed expert for Brackett but was not authorized to perform any services on Brackett's behalf until Brackett filed a properly supported motion for funding for those services.

Despite the money judge's invitation to Brackett to request more funding for the second expert, and despite the judge's indication that approval of those requests was likely, Brackett continued to request that new experts be appointed. Between September 26, 2012, and November 8, 2012, Brackett filed several additional motions requesting that a third expert be appointed to replace the second expert. The money judge denied all of the motions, noting that Brackett had repeatedly failed to comply with the December 13, 2011, order governing the requests and had failed to support his repeated motions with new or additional information.

Finally, on November 13, 2012, based on Brackett's continued failure to comply with the order entered on December 13, 2011; the previously authorized funds for an investigator to assist in Brackett's defense; Brackett's choice not to utilize the digital expert appointed; and there having been no further showing of the need and necessity for further services of an investigator or expert, the money judge ordered:

1.      The appoint[ment] of [Brackett's] investigator at county expense hereby TERMINATED and this court will not consider any further request for the investigator at county expense;

2.      The appointment of a new Digital Expert is hereby DENIED and this court will not consider any further application for public funds for an expert;

3.      The further request of [Brackett's investigator] for payment of investigative services that exceeded the authorization of this court is DENIED.

On appeal, Brackett contends that this order constituted an abuse of the money judge's discretion because it denied him "any access to expert assistance before and during the second trial." Indigent defendants are entitled as a matter of due process and equal protection to the basic tools of an adequate defense, including the provision of expert assistance at public expense when such is necessary for a fair trial. *Ake v. Oklahoma*, 470 U.S. 68, 82-83 (1985); *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *State v. Lovelace*, 140 Idaho 53, 65, 90 P.3d 278, 290 (2003); *State v. Olin*, 103 Idaho 391, 394, 648 P.2d 203, 206 (1982); *State v. Martin*, 146 Idaho 357, 361-62, 195 P.3d 716, 720-21 (Ct. App. 2008). In Idaho, these rights are safeguarded by I.C. § 19-852(a)(2), which provides that needy defendants are entitled "to be provided with the necessary services and facilities of representation (including investigation and other preparation)." *See Olin*, 103 Idaho at 394, 648 P.2d at 206 (included within the scope of I.C. § 19-852(a) are the Fourteenth Amendment requirements of due process and equal protection as they apply to indigent defendants). However, neither the Constitution nor I.C. § 19-852(a) prescribes any particular procedure that must be followed when an indigent defendant seeks funds to assist in the preparation of his or her defense.[3]

In determining whether to provide additional assistance at public expense, the Idaho Supreme Court has held that such assistance is not "automatically mandatory, but rather depends upon [the] needs of the defendant as revealed by the facts and circumstances of each case." *State v. Powers*, 96 Idaho 833, 838, 537 P.2d 1369, 1374 (1975). It is incumbent upon the trial court to consider the needs of the defendant and the facts and circumstances of the case and then decide whether an adequate defense is available to the defendant without the assistance of the requested expert or investigative aid. *Olin*, 103 Idaho at 395, 648 P.2d at 207. Denial of a

---

[3]      Subsequent to the trial in this case, the Idaho Supreme Court adopted I.C.R. 12.2, which sets forth procedures a court must utilize in entertaining motions requesting additional defense services.

request for expert or investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circumstances of the case. *Id.*

In this case, the money judge considered Brackett's request to appoint a third expert and determined that an adequate defense was available without the assistance of the third expert. As the United States Supreme Court held, an indigent defendant does not have a constitutional right "to choose an [expert] of his personal liking." *Ake*, 470 U.S. at 83. The money judge found that the second expert was competent and willing to adequately provide the services sought by Brackett in preparation of his defense. In addition, the money judge indicated to Brackett that it was "likely" that it would grant additional funds for the second expert to continue working on Brackett's case. However, Brackett failed to follow the proper procedure to seek funds and utilize his expert's assistance. The money judge's decision to deny Brackett's request for funds for a third expert was not clearly erroneous or unsupported by the circumstances of the case. Accordingly, Brackett has not shown that the money judge abused its discretion in denying Brackett's request for funds to hire a third expert.

### E.     Cumulative Error

Brackett also contends that the cumulative error doctrine applies here, necessitating a reversal of his convictions. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id.* Brackett has only shown that the district court erred in denying him access to evidence. Accordingly, Brackett has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine.

### III.

### CONCLUSION

Brackett has not shown that his speedy trial right was violated because he was largely the cause of the delays. Brackett has not shown that the district court erred in granting the state's motion for a mistrial because Brackett's comments substantially prejudiced the state's case. Brackett has shown that the district court erred in denying him access to evidence. However, the error was harmless. Brackett has not shown that the money judge erred in denying his request

for funds to hire a third expert.  Finally, the cumulative error doctrine does not apply because Brackett has not shown two or more errors by the district court.  Accordingly, Brackett's judgment of conviction for eight counts of possession of sexually exploitative material and five counts of sexual battery on a minor child of sixteen or seventeen is affirmed.

Judge GUTIERREZ and Judge HUSKEY, **CONCUR**.