# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49545

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

SHANNON L. ROWLAND,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Filed: January 9, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. Jonathan P. Brody and Hon. John K. Butler, District Judges.

Judgment of conviction for battery on a police officer and being a persistent violator, <u>affirmed</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

      Shannon L. Rowland appeals from his judgment of conviction for battery on a police officer and being a persistent violator. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

      Rowland was arrested on November 26, 2019, and a criminal complaint was filed by the State the next day. At the November 27, 2019 arraignment, the public defender's office was appointed to represent Rowland and bond was set. A preliminary hearing was held on December 11, 2019, at which time Rowland was bound over to district court where he was arraigned on January 27, 2020. Trial was set for March 11, 2020.

1

On February 12, 2020, the district court (Judge Brody presiding) addressed several motions, including the public defender's motion to withdraw as counsel and Rowland's pro se motion to "Proceed in Absentia of Counsel." The district court granted these motions. Rowland also argued the case should be dismissed based on the alleged lack of sufficient evidence. The district court informed Rowland that it needed the preliminary hearing transcript to rule on the motion and that the transcript may not be available by the February 24, 2020, pre-trial conference.

At the February 24, 2020, pre-trial conference, Judge Butler presided for Judge Brody. Judge Butler informed Rowland that he was uncertain as to when Judge Brody would be able to rule on Rowland's motion and was also uncertain as to whether that would happen before Rowland's trial. Judge Butler gave Rowland the option to either vacate the trial while awaiting Judge Brody's ruling on the motion to dismiss or to keep the trial date and wait to see if Judge Brody issued a ruling on the motion to dismiss prior to trial. Rowland indicated he would like to vacate his trial date. Judge Butler granted Rowland's request; vacated the March 11, 2020, trial; and scheduled the case for a status conference on March 30, 2020.[1]

In March 2020, the coronavirus (COVID-19) pandemic affected the timing of jury trials in Idaho. On March 13, 2020, the Idaho Supreme Court entered its first emergency order in response to the pandemic.[2] Ultimately, the Idaho Supreme Court issued numerous orders to varying effects as it monitored the COVID-19 incidence rates, effectively preventing criminal jury trials for several months.

On July 6, 2020, a pretrial conference was held via Zoom at which time Rowland asserted his speedy trial rights. On October 19, 2020, Rowland filed a motion to dismiss on this basis. The district court heard argument on the motion on October 28, 2020; took the matter under advisement; and ultimately entered an order denying the motion on December 4, 2020. In the interim and in response to another motion, the district court ordered Rowland to be released on his

---

[1]     Judge Butler noted that "hopefully" Judge Brody would have a decision on Rowland's motion to dismiss for insufficient evidence by the March 30, 2020, status conference. Judge Brody's decision denying Rowland's motion to dismiss was filed March 2, 2020.

[2]     It appears the March 30, 2020, status conference did not occur, possibly as a result of the Supreme Court's first emergency order. There was, however, a status conference via Zoom on May 6, 2020, at which time trial was set for August 5-7, 2020.

own recognizance on November 24, 2020. The Idaho Supreme Court orders preventing jury trials remained in effect throughout this period of time.

At a status conference held December 28, 2020, Rowland, who was out of custody, requested a status conference; the State requested a trial date. Trial was set for May 5, 2021, with a pretrial conference on April 26, 2021. At the pretrial conference, the district court granted the State's motion to continue due to witness unavailability; Rowland objected. Trial was continued to June 16, 2021. However, prior to trial, the case was set for a change of plea hearing following mediation. Rowland did not appear at the change of plea hearing. As a result, the case was continued until May 27, 2021, at which time the district court issued a bench warrant because Rowland failed to appear. Because Rowland was arrested in Wyoming and was challenging extradition, the June 16 trial date was vacated. Ultimately, Rowland pled guilty on September 23, 2021, to felony battery on a police officer, I.C. §§ 18-903(a) and 18-915(3)(b), and a sentencing enhancement for being a persistent violator, I.C. § 19-2514, and reserved his right to challenge the denial of his motion to dismiss for a speedy trial violation. Rowland appeals.

## II.

## STANDARD OF REVIEW

Whether a defendant's right to a speedy trial was infringed presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). The appellate court will defer to the trial court's findings of fact if supported by substantial and competent evidence but will exercise free review of the trial court's conclusions of law. *Id*.

## III.

## ANALYSIS

Rowland argues that the district court erred in denying his motion to dismiss based on an alleged constitutional speedy trial violation. The State responds that the district court correctly concluded that there was no violation of Rowland's speedy trial rights. We hold that Rowland has failed to show that the district court erred in concluding there was no speedy trial violation that would entitle him to dismissal of the criminal charges filed against him in this case.

Both the Sixth Amendment to the United States Constitution and Article 1, Section 13, of the Idaho Constitution guarantee to criminal defendants the right to a speedy trial. *State v. Prano*, 170 Idaho 337, 340, 510 P.3d 690, 693 (Ct. App. 2021). When analyzing claims of speedy trial

violations under the state and federal constitutions, the Idaho appellate courts utilize the four-factor balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). *See State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001); *State v. Lopez*, 144 Idaho 349, 352, 160 P.3d 1284, 1287 (Ct. App. 2007). That test includes consideration of the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice occasioned by the delay. *Barker*, 407 U.S. at 530. In *Barker*, the United States Supreme Court held that, because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is necessarily dependent upon the peculiar circumstances of the case. *Id.* at 530-31. Until there is some delay which is presumptively prejudicial, it is unnecessary to inquire into the three other factors. *State v. Brackett*, 160 Idaho 619, 625, 377 P.3d 1082, 1088 (Ct. App. 2016). The nature of the case is also of importance in determining the period of delay that can be tolerated. *Barker*, 407 U.S. at 531. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."[3] *Id*.

## A. Length of Delay

For purposes of the Sixth Amendment, the period of delay is measured from the date there is a formal indictment or information or the actual restraints imposed by arrest and holding to answer to a criminal charge. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Young*, 136 Idaho at 117, 29 P.3d at 953. Under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *Brackett*, 160 Idaho at 625, 377 P.3d at 1088. Once the balancing test is triggered, the length of the delay also becomes a factor in the balancing itself. *State v. Avila*, 143 Idaho 849, 853, 153 P.3d 1195, 1199 (Ct. App. 2006).

Rowland asserts, and the State concedes, that considering the nature of the case, the length of delay was sufficient to trigger an analysis of the other *Barker* factors. We agree. Rowland was

---

[3] In conjunction with his request to terminate his second court-appointed counsel, Rowland argued, in part, his case was "fairly complex" and he did not want appointed counsel to represent him because counsel had "never argued a jury trial or jury case" and, as a result, he didn't think he would "receive fair representation." We need not address the complexity of the charges against Rowland since the parties agree the length of delay was sufficient to trigger analysis of the other *Barker* factors.

arrested on November 26, 2019, and the district court issued the order denying his motion to dismiss for a speedy trial violation on December 4, 2020.[4]  Accordingly, at the time Rowland's speedy trial claim was considered by the district court, approximately one year and nine days had elapsed since Rowland's arrest.  A delay of just over one year in Rowland's case was, therefore, sufficient to trigger analysis of the additional *Barker* factors.  *See State v. Folk*, 151 Idaho 327, 333, 256 P.3d 735, 741 (2011) (holding that a delay of almost one year was sufficient to trigger inquiry into additional *Barker* factors where defendant was charged with lewd conduct with a child after the child had a nightmare and claimed the defendant had committed a lewd act upon the child); *State v. Campbell*, 104 Idaho 705, 708, 662 P.2d 1149, 1152 (Ct. App. 1983) (holding that a delay of one year in a robbery case was presumptively prejudicial).

**B.      Reason for Delay**

In evaluating the reason for the delay, different weights are assigned to different reasons. *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005).  Speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable.  *Doggett v. United States*, 505 U.S. 647, 656 (1992); *Davis*, 141 Idaho at 837, 118 P.3d at 169.  A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State.  *Barker*, 407 U.S. at 531.  However, a more neutral reason, such as negligence or overcrowded courts, should be weighed less heavily but, nevertheless, should be considered since the ultimate responsibility for such circumstances must rest with the State rather than with the defendant.  *Id*.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.  *Id.*

Following his initial arrest, Rowland's trial date was set for March 11, 2020.  At a pretrial conference held on February 24, 2020, Rowland agreed to vacate his trial.  Rowland argues that, in doing so, he was "relying upon inaccurate information" that was conveyed by Judge Butler regarding Judge Brody's ability to rule on Rowland's motion to dismiss for lack of sufficient evidence prior to trial.  According to Rowland, had Judge Butler not conveyed this "inaccurate

---

[4]      Even though Rowland's case was not resolved until he pled guilty on September 23, 2021, his speedy trial challenge is limited to the timeframe between arrest and the order denying his motion to dismiss that was filed on December 4, 2020.  As a result, this Court will consider the same period of time for purposes of our speedy trial analysis.

information," the "trial would have likely begun as scheduled." Rowland further argues (because he relied on this information), "that portion of the delay should weigh against the State, or at the very least, should not weigh against" him. This argument is unpersuasive and unsupported by the record.

The record indicates that, during the February 24 hearing, Judge Butler informed Rowland that his motion was "under advisement pending receipt of the preliminary hearing transcript."[5] Judge Butler then stated, "I do not know when Judge Brody will have his decision out. So, Mr. Rowland, do you want the trial date vacated pending the ruling on your motion or do you want to wait awhile to see if Judge Brody gets his decision out before March 11?" Rowland stated he would "like to go ahead and vacate the trial."

There are no apparent inaccuracies in the record that Rowland relied upon, and he was informed that he could wait and see if a decision was made on his motion prior to the trial date. Rowland elected to vacate the trial. The district court found that Rowland consented to the delay and that it was upon Rowland's own application that such delay occurred regarding his first trial setting. Based upon these findings, which are supported by the record, the reason for the delay from the time of Rowland's arrest to the time the first trial was vacated weighs against his speedy trial claim.

Rowland further argues that the additional delay resulting from the Idaho Supreme Court's emergency COVID-19 orders are attributable to the State "because the State had the obligation to ensure" Rowland's "constitutional right to a speedy trial was honored." The State argues that the delays attributable to the emergency orders were justified.[6] We agree with those courts that have found that delay due to the pandemic is justifiable and such delay is not weighed against the State. *See*, *e.g.*, *Labbee v. State*, 869 S.E.2d 520, 566 (Ga. Ct. App. 2022) (noting neither party was

---

[5] Prior to the February 24, 2020, pretrial hearing, Rowland stated he wanted to represent himself, and his counsel was allowed to withdraw after Rowland was informed of his rights and the potential consequences of representing himself. Rowland then filed a motion to dismiss in his pro se capacity.

[6] The State also argues that, even if the emergency orders had not prevented trials, Rowland independently contributed to the delays. Because we hold COVID-19 and the corresponding Idaho Supreme Court orders justified the delay, we do not address whether Rowland independently contributed to the delay while the orders were in effect.

responsible for pandemic-related delays and affirming trial court finding that the delay attributable to the pandemic "should not be weighed negatively against the State"); *State v. Paige*, 977 N.W.2d 829, 838-40 (Minn. 2022) (holding "trial delays due to the statewide orders issued in response to the COVID-19 global pandemic" did not weigh against the State because "the orders were responding to a deadly and virulent illness over which the court had no control" and the administration of justice "required the courts to ensure the health and safety of its employees and clients"); *State v. Brown*, 964 N.W.2d 682, 693 (Neb. 2021) (holding pandemic-related delays were a valid reason under a constitutional speedy trial analysis); *Ali v. Commonwealth*, 872 S.E.2d 662, 676 (Va. Ct. App. 2022) (holding delay attributable to pandemic was outside Commonwealth's control and explaining the "ongoing nature of the global pandemic supported the continuation of restrictions until such time as circumstances permitted the resumption of jury trials in a manner that protected both the health and safety of all participants and the constitutional rights of criminal defendants"); *State v. Tuinman*, 535 P.3d 362, 380 (Utah Ct. App. 2023) (observing that "delays associated with a once-in-a-century worldwide pandemic should not in fairness be held against the State in a Sixth Amendment speedy trial analysis" and concluding that such delays "should be considered justified, or at least considered 'neutral' and weighed against neither side").

## C.     Assertion of Speedy Trial Rights

In the context of a constitutional speedy trial analysis, the defendant's assertion of his or her right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Barke*r, 407 U.S. at 531-32. Failure to assert the right will make it difficult for a defendant to prove that he or she was denied a speedy trial. *Id*. at 532.

The district court's finding that Rowland first asserted his speedy trial right on July 6, 2020, is not disputed on appeal. Instead, Rowland argues that the assertion on July 6 and two subsequent assertions should be given strong evidentiary weight in favor of finding a violation of his constitutional speedy trial rights. The State argues that the July 6 assertion occurred nearly eight months after Rowland's arrest and, as such, should weigh against a finding that his speedy trial rights were violated. We agree that this near-eight-month period of time between Rowland's arrest and his assertion of his speedy trial right weighs against a finding that his speedy trial rights were violated. *See Barker*, 407 U.S. at 529-30 (explaining that the circumstances surrounding the

frequency and force of the defendant's assertion of his right to a speedy trial are proper considerations and any delay attributable to the defendant weighs against him). So too does Rowland's decision to vacate his first trial setting to allow the district court to consider his motion to dismiss for lack of sufficient evidence. *See Davis*, 141 Idaho at 839, 118 P.3d at 171 (noting defendant's acquiescence in delay "in hopes" that a motion to reconsider would be granted weighed against finding a speedy trial violation). Accordingly, this period of time weighs against a finding that Rowland's speedy trial rights were violated.

As for the number of times Rowland asserted his right to a speedy trial, he argues these "repeated assertions" should be entitled to strong evidentiary weight. However, the three assertions Rowland characterizes as "repeated" do not multiply their weight considering the circumstances surrounding the assertions. The first is the assertion on July 6 found by the district court, the timing of which is discussed above. The second was reflected in a letter the district court received from Rowland approximately two weeks later, on July 23, 2020, which was a day prior to a hearing on a motion in limine scheduled for July 24, 2020. The July 23 letter was Rowland's first written assertion and was sent pro se even though Rowland was represented by counsel who filed a motion to withdraw the following day based on Rowland's request to terminate counsel. The district court granted the motion, permitted counsel to withdraw, and appointed a third attorney to represent Rowland. Because Rowland requested and received another new attorney on July 24, 2020, the district court set the case for a status conference, noting newly appointed counsel "may wish to discuss the speedy trial issues" with Rowland; "may wish to file motions"; and would need to "get up to speed in the case." Without objection from Rowland, the court scheduled the status conference for August 5, 2020. At the status conference, the case was scheduled for trial to begin on October 7, 2020. The third assertion Rowland cites is the one made at a hearing held on October 2, 2020. At that hearing, the district court noted that the Fifth Judicial District was precluded from having trials the following week. In response, Rowland asserted his speedy trial rights and noted his intent to file a motion, but recognized the pandemic would not likely be "under control anytime soon."

Even giving Rowland's three assertions strong evidentiary weight, those assertions occurred during a period of time otherwise justifiably delayed as a result of the pandemic.

8

Accordingly, we hold Rowland's three cited assertions, all made during a time of valid, inevitable and justifiable delay, weigh against a finding that Rowland's speedy trial rights were violated.

**D.    Prejudice**

The fourth and final factor in the *Barker* analysis is prejudice to the accused caused by the delay. The nature and extent of prejudice arising out of a delay in bringing a criminal action to trial is the most important of the *Barker* factors. *State v. McNew*, 131 Idaho 268, 273, 954 P.2d 686, 691 (Ct. App 1998). Prejudice is to be assessed in light of the interests that the right to a speedy trial is designed to protect. *Young*, 136 Idaho at 118, 29 P.3d at 954. Those interests are: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Young*, 136 Idaho at 118, 29 P.3d at 954. The third of these is the most significant because a hindrance to adequate preparation of the defense skews the fairness of the entire system. *Barker*, 407 U.S. at 532; *Lopez*, 144 Idaho at 355, 160 P.3d at 1290.

Rowland argues that "the injuries suffered during his encounter with officers rendered his pretrial incarceration so oppressive that it was prejudicial under the *Barker* test."[7] Rowland cites four places in the record in support of his argument. First, Rowland notes that, during his district court arraignment which occurred on January 27, 2020, and approximately two months after his arrest, he "informed the court" that he was injured during his confrontation with law enforcement and he "begged for X-rays and medical attention." Second, Rowland cites his first attorney's motion to withdraw, filed February 5, 2020, in which the attorney noted he had spoken with Rowland several times "regarding medical care, bond, pending charges, possible defenses and other criminal law issues." The attorney's motion further explained that Rowland "disagreed" with the attorney "on his analysis of the law and facts during these conversations." Third, Rowland cites a pro se motion he filed on February 7, 2020, in which he describes injuries he claims to have received during his encounter with law enforcement. Fourth, and finally, Rowland cites the motion to dismiss based on an alleged speedy trial violation that he filed more than eight months later, on October 19, 2020. In that motion, Rowland argued he was prejudiced, in part, because he "has

---

[7]     Rowland's arguments relate to the first interest protected by the right to speedy trial as identified in *Barker*--the prevention of oppressive pretrial incarceration. Rowland does not argue that the second or third interests were implicated.

9

consistently asserted that he has been in pain while incarcerated and has requested numerous medical appointments, including appointments for anxiety." On appeal, however, Rowland does not include the reference to appointments for anxiety.

We first dispose of Rowland's reliance on the January 27, February 5, and February 7 representations as support for his claim of prejudice. The assertions made on those dates, within two months of his arrest and well before his first speedy trial assertion on July 6, 2020, do not qualify as prejudice for purposes of a speedy trial analysis. Alleged injuries sustained before incarceration are not among the interests the speedy trial right was designed to protect. Rather, the oppressive pretrial incarceration concern specific to the accused relates to concerns such as the loss of a job, the disruption of family life, and hindrance in preparing a defense. *Barker*, 407 U.S. at 532-33 (describing relevant considerations for prejudice resulting from oppressive pretrial incarceration). As the State correctly notes, Rowland cites no authority to support his claim that his alleged injuries are the type of prejudice that should be weighed in the context of pretrial incarceration.

Moreover, Rowland did not cite physical injuries or his need for medical attention as part of his July 6, July 23, or October 2 speedy trial assertions. When Rowland first asserted his speedy trial rights on July 6, he stated: "I believe that eight months is far too long for a speedy trial. . . . Eight months, it's ridiculous, Your Honor, to wait this long to try to get an adjudication in a matter that could--could be taken care of with a simple plea agreement."[8] Although Rowland's July 23 letter asserting his speedy trial rights is not included in the record on appeal, Rowland never asserted at the July 24 hearing in response to the district court's reference to the letter that the reason for the request was physical injury or medical needs. Instead, as noted, Rowland was appointed yet another attorney at that hearing and the case was reset for a status conference. The assertion on October 2 also was void of any reference to a physical or medical reason causing prejudice--it was solely an expression of an intent to file a motion. We are unpersuaded by Rowland's attempts to bootstrap separate complaints about alleged physical injuries and medical needs into his speedy trial prejudice argument.

---

[8]     At that time, Rowland indicated he would plead guilty to three misdemeanors.

10

The remaining complaint specific to Rowland's pretrial incarceration is the one asserted in his written motion--that he has "been in pain while incarcerated and has requested numerous medical appointments, including appointments for anxiety." In *Barker*, the Court recognized that "living under a cloud of anxiety" is relevant to prejudice. *Barker*, 407 U.S. at 533. However, as noted, Rowland has not pressed the anxiety factor as a consideration for purposes of assessing prejudice. Nor did Rowland cite anxiety at the hearing on the motion and only argued that the Idaho Supreme Court could "enter a blanket tolling of speedy trial right without an analysis of the factors that go into speedy trial."[9] Further, the district court made no findings in this regard. Consequently, we do not consider anxiety in our analysis of prejudice.

Although a period of continuous pretrial incarceration could result in prejudice, we conclude that Rowland has shown little, if any, prejudice to weigh in this case.

E.      Balancing

Weighing the four *Barker* factors, together with the other relevant circumstances, we conclude, as did the district court, that there has been no violation of Rowland's constitutional right to a speedy trial. Although the length of delay in the case was sufficient to presume some prejudice and trigger the analysis of the other *Barker* factors, for the reasons stated, the prejudice factor is of limited significance, particularly when weighed with the other factors in this case. Rowland acquiesced in some delay by asking to vacate his first trial and he contributed to delay by seeking new counsel. *See State v. Reutzel*, 130 Idaho 88, 94, 936 P.3d 1330, 1336 (Ct. App. 1997) (concluding that defendant's "request for substitute attorney made it necessary for the trial court to postpone the trial"). In addition, the majority of delay was justified by the COVID-19 pandemic and the Idaho Supreme Court's emergency orders suspending jury trials. Rowland has failed to carry his burden of showing his constitutional speedy trial rights were violated. Accordingly, the district court did not err in denying Rowland's motion to dismiss.

---

[9]     In addition to counsel's limited argument regarding the speedy trial issue, Rowland spoke on his own behalf and never asserted that he was suffering anxiety (or untreated medical issues) during his pretrial incarceration. Rowland instead argued that he had asserted his right to a speedy trial and constitutional rights should not be dismissed "willy-nilly."

## IV.
## CONCLUSION

Rowland has failed to show that the district court erred in denying his motion to dismiss based on a speedy trial violation. Accordingly, his judgment of conviction for battery on a police officer with a persistent violator enhancement is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.