# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46608

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, May 2020 Term |
| | ) | |
| v. | ) | Opinion filed: October 1, 2020 |
| | ) | |
| CARI LEONE OXFORD, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Stephen S. Dunn, District Judge.

The district court's judgment of conviction is <u>affirmed;</u> the order of restitution is <u>vacated</u>.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Andrea Reynolds argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kale Gans argued.

---

MOELLER, Justice

Cari Leone Oxford was arrested after she kidnapped her neighbor's infant son. A Bannock County jury found Oxford guilty of burglary and kidnapping in the second degree. Oxford appeals from her judgment of conviction. On appeal, Oxford contends that the district court abused its discretion in (1) denying her the funds necessary to retain an expert witness to assist with her defense; (2) refusing to allow the doctor who examined her for purposes of her competency evaluation to testify at trial regarding her mental health condition; and (3) ordering restitution without any evidence supporting it. For the reasons stated below, we affirm the judgment of conviction and vacate the order of restitution.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2017, Oxford confronted her neighbor from across the hall as the neighbor was arriving home from work with her eighteen-month-old son in her arms. As the neighbor approached her apartment door, Oxford came out of her own apartment and began yelling at the neighbor "about not going into the laundry room." The neighbor retreated into her own apartment and attempted to close the door, but Oxford stopped her and pushed the door open. Moments later, Oxford started punching and kicking the neighbor. Oxford then grabbed the neighbor's infant son, fled with the baby into her own apartment, and shut the door.

The neighbor called 911 and police were dispatched to the scene. Once the police arrived, they knocked on Oxford's door until she opened it. One of the officers testified that Oxford was holding onto the baby and saying that she did not want the officers "to take her baby away." Oxford kept shouting that the baby was her son. According to the officer, Oxford seemed "confused about the baby's age," at one point stating "he was a few months old" and at another point stating he was in "his twenties." The officer also testified that Oxford "really seemed disoriented" and that "there was certainly something going on." Finally, the officers "pried [Oxford's] arms from around the baby" and returned him to his mother. The officers arrested Oxford.

The State filed a complaint against Oxford, alleging she committed the crimes of Burglary, I.C. § 18-1401, and Kidnapping in the Second Degree, I.C. § 18-4503. Oxford moved to continue the preliminary hearing to allow for a competency evaluation pursuant to Idaho Code section 18-211. The magistrate court granted the continuance and ordered a competency evaluation.

The magistrate court appointed Dr. Daniel Traughber to conduct the evaluation. The evaluation took place approximately seven weeks after the criminal conduct that is the subject of this appeal. Dr. Traughber found Oxford was not competent to stand trial. Dr. Traughber opined that Oxford "is currently [mentally ill], and has likely suffered from a mental illness for some time." Although Dr. Traughber could not establish an exact diagnosis, he determined that "these problems affect [Oxford's] cognitive processes, behavior, and certainly her impulse control." Therefore, Dr. Traughber concluded that "Oxford does meet criteria for a mental illness and is in need of treatment/support." Based on Dr. Traughber's evaluation, the magistrate court found that Oxford "lacks the capacity to make informed decisions about treatment" and therefore, "is not fit

to proceed" to trial. Accordingly, the court ordered Oxford into the custody of the Department of Health and Welfare for treatment and further evaluation.

A few months later, the magistrate court terminated Oxford's order of commitment after Dr. Baker, Chief of Psychology at State Hospital South, filed a report with the court stating Oxford had been restored to competency and was now fit to proceed to trial. Following a preliminary hearing, Oxford was bound over to the district court where she pleaded not guilty to both counts.

Prior to trial, defense counsel for Oxford filed a motion for the appointment of an expert witness. Defense counsel requested, based on Oxford's "indigency status," that the district court issue an order "approving the retention of a licensed psychiatrist or psychologist . . . to advise [Oxford] regarding her defense in this matter that her mental health situation on the date of the incident charged in this matter was such that she could not have possessed the requisite intent to have committed the offenses charged." Defense counsel explained that he believed Oxford "has a defense to the specific intent portions of the charges brought against her."

After a hearing on the matter on January 22, 2018, the district court granted Oxford's motion with one "exception": "[T]he PD's office does have, I think, an expert witness portion of their budget. So . . . I'm reluctant to order the district court to pay for it if there is a budget amount for that." Defense counsel said "okay" and that he would ask the Public Defender's Office about funds to pay for the expert witness. The minutes from the hearing confirm that the court "granted the Motion for Appointment of Expert Witness. The [c]ourt advised that the costs for the expert witness shall be paid for by the Public Defender's budget."

On June 14, 2018, defense counsel filed a motion in limine. Defense counsel informed the district court that he had "made a request for funds to be allocated from the public defender's office budget, but was denied because the funds were necessary for the defense of a capital case." Rather than requesting that the district court allocate funds from a different public source, defense counsel sought a ruling that

> [Oxford] is allowed to produce evidence that she suffered from a mental illness which resulted in her inability to form the required intent to commit Burglary and Kidnapping [i]n [t]he Second Degree, and a ruling that Dr. Traughber will be allowed to testify at trial regarding his observations and conclusions about [Oxford] during his competency evaluation.

Defense counsel clarified that "[i]t is the intent of the defense to call [Dr. Traughber] both as a fact witness regarding his observations of [Oxford] . . . [and] as an expert witness."

3

The State filed an objection to Oxford's motion in limine. The State argued in part that the district court should not permit Dr. Traughber to testify at trial because Dr. Traughber's evaluation of Oxford's competency took place approximately seven weeks after the incident occurred and does not go to show Oxford's state of mind at the time of the burglary and kidnapping, which is the relevant state of mind.

At the hearing on Oxford's motion, the district court asked whether defense counsel had a report from Dr. Traughber regarding the opinions he intended to offer at trial. Defense counsel responded that "the 18-211 exam was the only evaluation and the only opinion [he had] ever gotten from Dr. Traughber." The district court held that defense counsel would have to "lay a proper foundation" before Dr. Traughber's section 18-211 exam could be admitted at trial.

On September 7, 2018, eleven days prior to trial, the State filed a motion to exclude Dr. Traughber's testimony under Idaho Rules of Evidence 401, 402, and 403 because his testimony was irrelevant and would confuse the jury. The State argued that Dr. Traughber's section 18-211 competency evaluation did not address Oxford's ability to form the necessary intent to commit the charged offenses; rather, the evaluation solely focused on Oxford's competency to stand trial. The State asserted that "[i]n order to determine whether or not [Oxford] could or could not form the intent to commit a crime[,] a *mens rea e*valuation needs to be completed," which is different than Dr. Traughber's 18-211 competency evaluation. The district court took the State's motion under advisement.

At trial, the district court provided defense counsel an "opportunity to make an offer of proof . . . as to the testimony that would have been offered by Dr. Traughber." Once again, defense counsel only offered Dr. Traughber's 18-211 evaluation of Oxford. Defense counsel explained its intent "to just have him testify as to his interview with [Oxford] and the contents of that report. Those were his observations, and those were his expert conclusions in terms of a diagnosis and what it was." With that, the district court ruled that defense counsel failed to establish a "sufficient foundation and basis for allowing Dr. Traughber to testify as to [Oxford's] mental health conditions or the specific intent requirements." Accordingly, the district court concluded that Dr. Traughber could not testify at trial.

At the conclusion of her trial, the jury found Oxford guilty of burglary and kidnapping in the second degree. The district court sentenced Oxford to concurrent unified terms of five years with two years fixed for the burglary charge, and ten years with three years fixed for the

4

kidnapping charge. The district court then suspended Oxford's sentence and placed her on probation for six years. The district court also ordered Oxford to pay $6,072.09 in restitution to the Idaho Industrial Commission for payments made on behalf of the victim, Oxford's neighbor, for the injuries she incurred on the night of the criminal conduct.

Oxford's counsel initially objected to the restitution order at the sentencing hearing because Oxford did not "have the ability to pay the restitution in the amount that's been requested." The district court ordered the entire requested amount of restitution, $6,072.09, but explained that Oxford could object at the restitution hearing to be held at a later date. The next day, Oxford filed a written objection to restitution, asserting that there is "no supporting information upon which the [c]ourt can find that the bills paid by the Industrial Commission relate to the offenses for which [Oxford] was found guilty or, if the bills are related to the charges in this matter, that such injuries were directly related to [Oxford's] criminal conduct." At the restitution hearing, the district court agreed with Oxford that "the [restitution] request is insufficient as far as providing adequate support" as to what amounts were actually paid by the Industrial Commission and what bills occurred at what times and for what circumstances. Nevertheless, the court overruled Oxford's objection "with the caveat" that the State submit additional evidence supporting its restitution request within three weeks. The district court held that it would "make a final ruling" after the State provided such additional evidence. The State failed to submit any additional evidence as requested by the court; yet, the court's conditional ruling granting full restitution remained in place. Oxford timely appealed.

## II.     STANDARD OF REVIEW

This Court reviews a trial court's evidentiary rulings, decision on a request for expert assistance at public expense, and restitution awards for an abuse of discretion. *See Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50, 995 P.2d 816, 820 (2000) (evidentiary ruling); *State v. Brackett*, 160 Idaho 619, 634, 377 P.3d 1082, 1097 (Ct. App. 2016) (expert or investigative assistance); *State v. Straub*, 153 Idaho 882, 887, 292 P.3d 273, 278 (2013) (restitution). This Court applies the familiar four-part test to determine whether a trial court has abused its discretion: whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by

the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018).

## III.    ANALYSIS

**A. The district court did not abuse its discretion by directing that the funding for Oxford's expert witness come from the Public Defender's budget.**

Oxford contends that the district court violated her constitutional rights to due process and equal protection and violated Idaho Code section 19-852 when it denied her the funds needed to retain an expert witness to assist with her defense. The State requests that we not address this issue because it was not preserved for appeal. In the alternative, the State contends that Oxford, who "undoubtedly had a right to any necessary 'expert assistance at public expense,' " has failed to show any error because she did in fact acquire an expert, *i.e.*, Dr. Traughber. According to the State, Oxford's "essential gripe is that she was unable to hire some *other* expert more to her liking."

> *i.        Oxford adequately preserved this issue for appeal.*

The State contends that Oxford's claim—that the district court violated her constitutional rights when it denied her the funds needed to retain an expert witness—was not argued below and, therefore, is not preserved for appeal. According to the State, Oxford never cited any constitutional authority in her request for funding before the district court. Oxford contends that this issue was preserved for appeal because she argued in her briefing that the district court *abused its discretion* by denying her the funds needed to retain an expert witness, which resulted in a denial of her constitutional right to a fair trial. We hold that Oxford has adequately preserved this issue for appeal.

"This Court will not consider issues raised for the first time on appeal." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (quoting *Mickelsen Const., Inc. v. Horrocks*, 154 Idaho 396, 405, 299 P.3d 203, 212 (2013)). "Issues not raised below will not be considered by this [C]ourt on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *Id.* (quoting *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799–800, 589 P.2d 546–47 (1979)).

Here, Oxford filed a motion for the appointment of an expert witness at public expense. The district court granted Oxford's motion and directed that the "public funds" come from the Public Defender's Office if such funds were available. Oxford challenged the district court's decision on appeal, citing the Court of Appeals' decision in *Brackett*. As the Court of Appeals

held in *Brackett*, "[d]enial of a request for expert or investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circumstances of the case." 160 Idaho at 634, 377 P.3d at 1097. If a court abuses its discretion by "den[ying a defendant] access to the basic tools of an adequate defense, then he has also been denied his due process right of a fair trial." *State v. Olin*, 103 Idaho 391, 394, 648 P.2d 203, 206 (1982).

Thus, it was implicit in Oxford's underlying motion for funding to retain an expert witness that she had a constitutional right to such relief. Unless Oxford, who was represented by a public defender, had a constitutional right to obtain public funding for such a witness due to her indigency, there would have been no reason for the defense to request that the court authorize funding to retain one. Here, in light of the district court's ruling on Oxford's motion, there was no need for defense counsel to brief the issue and cite the constitutional authority for the request. Therefore, we hold that Oxford has not raised a new issue on appeal by arguing that she was denied her constitutional right to due process and equal protection when the district court allegedly denied her motion for public funds to retain an expert witness to assist with her defense. Accordingly, we will address the merits of this issue.

ii. *The district court did not deny Oxford's motion for funding to retain an expert witness, and did not abuse its discretion in initially directing that the funding for the witness come from the Public Defender's budget.*

"Indigent defendants are entitled as a matter of due process and equal protection to the basic tools of an adequate defense, including the provision of expert assistance at public expense when such is necessary for a fair trial." *Brackett*, 160 Idaho at 633, 377 P.3d at 1096. These rights are safeguarded by Idaho Code section 19-852(1). Section 19-852(1) provides in part:

(1) An indigent person who is . . . under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:

. . . .

(b) To be provided with the necessary services and facilities of representation including investigation and other preparation. The attorney, services and facilities and the court costs shall be provided at public expense to the extent that the person is, at the time the court determines indigency pursuant to section 19-854, Idaho Code, unable to provide for their payment.

7

Idaho Criminal Rule 12.2 provides the requirements for obtaining such funds. *See* I.C.R. 12.2(a) ("A defendant may submit a motion requesting public funds to pay for investigative, expert, or other services that he believes are necessary for his defense. . . .").

Assistance is not automatically mandatory, "but rather depends upon [the] needs of the defendant as revealed by the facts and circumstances of each case." *Brackett*, 160 Idaho at 634, 377 P.3d at 1097 (quoting *State v. Powers*, 96 Idaho 833, 838, 537 P.2d 1369, 1374 (1975)). Accordingly,

> [i]t is thus incumbent upon the trial court to inquire into the needs of the defendant and the circumstances of the case, and then make a determination of whether an adequate defense will be available to the defendant without the requested expert or investigative aid. If the answer is in the negative, then the services are necessary and must be provided by the state. . . .

*State v. Wood*, 132 Idaho 88, 100, 967 P.2d 702, 714 (1998) (quoting *Olin*, 103 Idaho at 395, 648 P.2d at 207). The grant or denial of assistance under section 19-852(1) is left to the sound discretion of the trial court. *Id.*

Although section 19-852 explains that the necessary services shall be provided at "public expense," it does not explain where the "public expense[s]" shall come from, nor does any other section within the same chapter of the Idaho Code. However, Rule 12.2 does explain that if the motion for additional defense services is filed by private counsel for the defendant, "and the additional defense services are to be provided through *funds budgeted to the public defender*," the public defender must be served with a copy of the motion. I.C.R. 12.2(f) (emphasis added). Accordingly, "public funds" may at times be allocated from the public defender's budget.

Here, the district court agreed with Oxford that an additional expert to help Oxford with her defense was necessary. Therefore, contrary to counsel's repeated assertions at oral argument, the district court did not deny the motion. However, instead of merely ordering that the funds be paid at public expense, the court proposed the funds come from a specific source, *i.e.*, the Public Defender's Office's budget, if funds were available. As it turned out, *funds were available, but the Public Defender's Office denied release of those funds* because "the funds were necessary for the defense of a capital case." At that point, defense counsel should have informed the court and requested that the county allocate additional funds from elsewhere, yet it did not. Instead, defense counsel offered to use Dr. Traughber as its expert witness, even though both the State and the district court pointed out on several occasions that Dr. Traughber might not be able to lay the necessary foundation at trial.

Accordingly, we hold that the district court did not abuse its discretion in granting the motion and directing that the public funds for Oxford's expert witness come from the Public Defender's Office. In so holding, we recognize that the better practice would have been for the court to grant the motion and simply order that the funds be provided "at public expense." It is not the court's role to direct the details of a county's expenditures and specify the source of its disbursements. Notwithstanding the form of the district court's order, it was not a *de facto* denial of funds because nothing in its order discouraged defense counsel from seeking an alternate source of funding. Additionally, defense counsel could have requested that the county provide additional funding to the Public Defender's Office to pay for constitutionally required services if it felt obligated to allocate the budgeted funds to cases it deemed were a higher priority.

**B. The district court did not abuse its discretion in ruling (1) that the defense failed to establish a proper foundation to allow Dr. Traughber to testify at trial about Oxford's *mens rea* at the time of the crime and (2) the testimony was not relevant under Rules 401 and 403.**

Oxford contends that the district court abused its discretion by refusing to allow Dr. Traughber—the psychologist who conducted Oxford's section 18-211 competency evaluation—to testify as an expert witness for the defense at trial. According to Oxford, Dr. Traughber's testimony would have helped the jury understand the evidence and determine the key fact at issue: whether Oxford had the specific intent to commit burglary and kidnapping. The State contends that the district court properly excluded the testimony of Dr. Traughber because Dr. Traughber could not offer any testimony on the more relevant question: whether Oxford lacked the intent to commit the crimes *at the time she committed them*. We hold that the district court did not abuse its discretion in refusing to allow Dr. Traughber to testify at trial because defense counsel failed to lay proper foundation.

Idaho Code section 18-207 provides that "[m]ental condition shall not be a defense to any charge of criminal conduct." I.C. § 18-207(1). However, evidence of mental health is still expressly permitted to rebut the State's evidence offered to prove criminal intent or *mens rea*:

> Idaho Code § 18-207 does not remove the element of criminal responsibility for the crime. The prosecution is still required to prove beyond a reasonable doubt that a defendant had the mental capacity to form the necessary intent. Idaho Code § 18-207 merely disallows mental condition from providing a complete defense to the crime and may allow the conviction of persons who may be insane by some former insanity test or medical standard, but who nevertheless have the ability to form intent and to control their actions. The statute expressly allows admission of

9

expert evidence on the issues of mens rea or any state of mind which is an element of the crime.

*State v. Samuel*, 165 Idaho 746, 770, 452 P.3d 768, 792 (2019) (quoting *State v. Card*, 121 Idaho 425, 430, 825 P.2d 1081, 1086 (1991)). "Whether the accused possessed the necessary intent to commit the offense is a question for the finder of fact." *State v. Matthews*, 124 Idaho 806, 814, 864 P.2d 644, 652 (Ct. App. 1993).

Here, Oxford was charged with Burglary, I.C. § 18-1401, and Kidnapping in the Second Degree, I.C. § 18-4501. Because burglary and kidnapping are specific intent crimes, state of mind is an element in both offenses. *See* I.C. § 18-1401 (criminalizing the act of entering a building when done "with intent to commit any theft or any felony."); I.C. § 18-4501(1) (criminalizing the act of kidnapping another when done "with intent to cause [the victim], without authority of law, to be secretly confined or imprisoned within this state."); I.C. § 18-4501(2) (criminalizing the act of taking a child under the age of sixteen when done "with intent to keep or conceal it from its custodial parent, guardian or other person having lawful care or control thereof."). Accordingly, expert evidence addressing the issue of *mens rea* would be permissible in this case.

Oxford sought to call Dr. Traughber as an expert at trial to testify concerning "his observations and his professional opinion . . . of what . . . mental illness [Oxford] was suffering from at the time [of the crime]." As noted, Dr. Traughber was initially appointed by the court to perform a competency evaluation of Oxford. According to defense counsel, Dr. Traughber would "offer the . . . evaluation on the 18-211, 18-212 exam" and would "testify as to his interview with her and the contents of that report." The State objected to the admission of Dr. Traughber's testimony under Idaho Rules of Evidence 401, 402, and 403 because his "evaluation doesn't talk about what her state of mind was on the date in question." The State explained that "[i]n order to be able to address the *mens rea* and bring that evidence before the jury, the defense would need to have an evaluation done that addresses that." When the district court asked defense counsel whether Dr. Traughber intended to provide an additional opinion as to whether Oxford "did not have the specific intent to commit the crime," defense counsel explained that he was not: "I didn't hire [Dr. Traughber] as an expert to go in and give an opinion on that particular -- on that specific issue." The district court ruled at trial that he would not allow Dr. Traughber to testify because defense counsel failed to lay "sufficient foundation and basis for allowing Dr. Traughber to testify as to [Oxford's] mental health conditions or the specific intent requirements."

10

Oxford contends that, although the "district court was correct to conclude that Dr. Traughber could not testify that, based on his evaluation, Ms. Oxford 'was unable to form the specific intent necessary to commit these crimes,' . . . [t]hat does not make his testimony inadmissible." According to Oxford, "Dr. Traughber could have testified regarding his clinical diagnosis of Ms. Oxford, which is a concept beyond the common experience of most jurors, and would have assisted the jurors in evaluating the evidence."

Generally, evidence that has any tendency to make a fact more or less probable than it would be without the evidence is admissible. I.R.E. 401. However, even if evidence is relevant, it may be excluded if its "probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." I.R.E. 403. Additionally, expert witness opinion is governed by Idaho Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

"[T]he trial court has the discretion to determine whether a proper foundation has been laid for the admission of expert testimony." *State v. Almaraz*, 154 Idaho 584, 603, 301 P.3d 242, 261 (2013) (quoting *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 593, 67 P.3d 68, 72 (2003)).

After reviewing the record, we hold that the district court did not abuse its discretion in barring Dr. Traughber's testimony. Oxford conceded in her opening brief on appeal that "[t]he district court was correct to conclude that Dr. Traughber could not testify that, based on his evaluation, Ms. Oxford 'was unable to form the specific intent necessary to commit these crimes.' " In the proceedings below, defense counsel explained that Dr. Traughber would testify as to Oxford's clinical diagnosis as contained in his report, which only addressed Oxford's mental state *at the time of the interview*. Thus, the district court did not err by concluding that Dr. Traughber's testimony would not have assisted the trier of fact in determining Oxford's state of mind *at the time of the criminal conduct*. As the Court of Appeals emphasized in *State v. Dryden*, section 18-207 is "concerned with mental disease or defect at the time of [the] criminal conduct." 105 Idaho 848, 850, 673 P.2d 809, 811 (Ct. App. 1983).

Likewise, allowing such testimony for the general purpose of explaining Oxford's "clinical diagnosis," as suggested by Oxford's trial counsel, would have also been improper.

Absent additional testimony discussing Oxford's state of mind at the time of the criminal conduct, Dr. Traughber's testimony would only invite the jury to speculate about matters beyond the scope of Dr. Traughber's opinion. Thus, Dr. Traughber's testimony would have been irrelevant under Rule 401, as it would not assist the trier of fact in determining whether Oxford had the necessary state of mind at the time of the criminal conduct. Likewise, the testimony would have been confusing and misleading to the jury under Rule 403, as there is a substantial likelihood that the jury might believe that Dr. Traughber's testimony is being offered to prove Oxford's state of mind at the time of the criminal conduct since that is the only relevant state of mind. Moreover, Rule 702 requires that the expert's testimony help the trier of fact determine a fact in issue, which in this case would be Oxford's state of mind at the time of the criminal conduct. Dr. Traughber's testimony would not assist the trier of fact in that regard. When dealing with this type of medical evidence, it is incumbent upon the defense to call a qualified expert witness to "connect the dots" for the jury by offering a competent medical *opinion*, rather than merely laying out the data and permitting the jury to reach their own conclusions. Here, admitting such evidence would essentially invite the jury to reach a medical conclusion that Oxford has conceded Dr. Traughber could not reach himself. Therefore, we hold that the district court did not abuse its discretion in excluding Dr. Traughber's testimony at trial.

**C. The district court abused its discretion in ordering restitution over the defense's objection without any evidence supporting it.**

Pursuant to Idaho Code section 19-5304(2), the State requested $6,072.29 in restitution payable to the Idaho Industrial Commission for payments it made on behalf of Oxford's neighbor, the victim in this case. The State alleged that the funds expended by the Industrial Commission were for injuries she sustained on the night of the crime. Oxford objected to the request in part because the State failed to support its request with evidence showing the payments made on behalf of the victim actually related to the criminal conduct or that her injuries were directly related to the criminal conduct. Although the district court agreed that the requested amount of restitution was not supported by substantial evidence, the court overruled Oxford's objection "with the caveat" that the State submit additional evidence to support the order of restitution by a specified date. The State failed to submit any additional evidence, yet the court kept the conditional restitution order in place.

On appeal, Oxford contends that the district court abused its discretion in ordering restitution in the absence of substantial evidence supporting the request. The State contends that

although it did not submit additional evidence to the district court upon its request, Oxford failed to renew her objection and request that the district court withdraw its conditional restitution order, thereby waiving her objection.

The first issue we address is whether Oxford was required to renew her objection when the district court failed to vacate the restitution award in order to preserve this issue for appeal. We disagree with the State's analysis and hold that Oxford's objections were sufficient to preserve this issue for appeal.

The State fails to cite any authority wherein we have held that a renewed objection is necessary to preserve an issue regarding an order of restitution for appeal. In fact, we have held precisely the opposite. In *State v. Villa-Guzman*, we held that "defects in the documents admitted to support restitution are *foundational* errors, which require an objection at the time of the restitution hearing to preserve those arguments for appeal." 166 Idaho 382, ___, 458 P.3d 960, 962 (2020) (emphasis in original). Nowhere in that decision did we hold that multiple objections must be made until the district court issues a "final ruling," as suggested by the State. Accordingly, for purposes of restitution, we hold that one objection is sufficient, if the final order grants the same relief objected to by the defendant.

Here, defense counsel actually objected to restitution on three separate occasions. First, defense counsel objected at sentencing, contending that Oxford did not have the ability to pay restitution in the requested amount. Second, defense counsel followed up by filing a written objection to the order of restitution. In that objection, defense counsel argued that there is "no supporting information upon which the [c]ourt can find that the bills paid by the Industrial Commission relate to the offenses for which [Oxford] was found guilty or, if the bills are related to the charges in this matter, that such injuries were directly related to [Oxford's] criminal conduct." Finally, defense counsel orally objected to the order of restitution at the restitution hearing. Accordingly, we hold that Oxford's objections were sufficient to preserve this issue for appeal.

Having held that this issue is preserved for appeal, the next issue we address is whether the order of restitution is supported by substantial evidence. "[W]hether to order restitution, and in what amount, is within the district court's discretion and is guided by consideration of the factors set forth in Idaho Code section 19-5304(7)." *State v. Wisdom*, 161 Idaho 916, 919, 393 P.3d 576, 579 (2017) (quoting *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011)).

The district court must "base the restitution award on the preponderance of the evidence submitted by the prosecutor, defendant, victim, or presentence investigator." *Id.* (citing I.C. § 19-5304(6)). Finally, "[w]hat amount of restitution to award is a question of fact for the district court, whose findings will not be disturbed if supported by substantial evidence." *Id.* Substantial evidence is "relevant evidence as a reasonable mind might accept to support a conclusion." *Id.* (quoting *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013)).

In *State v. Nelson*, this Court vacated a restitution award because it was not supported by substantial evidence. 161 Idaho 692, 697, 390 P.3d 418, 423 (2017). In that case, we focused on how "the court may order restitution" to the State for prosecution expenses "actually incurred." *Id.* at 695, 390 P.3d at 421 (quoting I.C. § 37-2732(k)). The sole "evidence" supporting the restitution award was a one-paragraph form, the statement of costs. *Id.* This Court took issue with the statement of costs because it was a "boilerplate, fill-in-the-blank-style form" the State used in other cases. *Id.* The statement of costs did not contain itemized entries explaining the tasks performed or the expenditures made in the particular case, nor did it state that restitution was sought only for expenses actually incurred in prosecuting the charge. *Id.* at 695–96, 390 P.3d at 421–22. Accordingly, we held that "unsworn representations, even by an officer of the court, do not constitute 'substantial evidence.' " *Id.*

Here, the sole "evidence" supporting the order of restitution is a one-page, unsworn letter from the Crime Victims Compensation Program (CVCP). The letter states that it is requesting restitution "for payments made on behalf of [the victim]." The payment summary lists the "provider," the "billed amount," the "non allowed amount," the "allowed amount," the "CVCP payment to claimant," and the "CVCP payment to provider." The letter does not provide descriptions of the types of services provided, nor does it provide the date of such services. Similar to *Nelson*, this one-page, unsworn letter is insufficient to support an order of restitution under Idaho Code section 19-5304. The district court recognized this and ordered that "additional information would need to be obtained and/or provided so I can adequately review the request," which the State conceded it failed to provide. Accordingly, we hold that the restitution award in this case is not supported by substantial evidence.

Having held that the order of restitution is not supported by substantial evidence, the final issue we address is the appropriate remedy. Oxford contends that the proper remedy is to vacate the restitution award. The State contends that the proper remedy is "a limited remand for the

14

state to provide that information to the district court." We hold that under the circumstances of this case, the appropriate remedy is to vacate the restitution award.

On appeal, when an order of restitution is not supported by substantial evidence, the appropriate remedy is to either vacate or remand the order, depending on the circumstances. In some circumstances, a remand is the appropriate remedy. For example, in *State v. Cunningham*, we remanded the district court's restitution award because the State did not have multiple opportunities to support its request. 161 Idaho 698, 702, 390 P.3d 424, 428 (2017) (*Cunningham I*). In other circumstances, however, vacating the order is the more appropriate remedy. For example, in *Nelson*, we vacated the district court's restitution award without remanding it because "the State already had two opportunities to claim restitution." 161 Idaho at 697, 390 P.3d at 423. Similarly, in *State v. Cunningham*, we declined to remand to allow the State an opportunity to claim restitution because "[t]he State already had two opportunities to claim restitution, and remanding for a third opportunity would be improper." 164 Idaho 759, 765, 435 P.3d 539, 545 (2019) (*Cunningham II*) (quoting *Nelson*, 161 Idaho at 697, 390 P.3d at 423).

Here, we hold that the appropriate remedy is to vacate the order of restitution without remanding it. Similar to *Nelson* and *Cunningham II*, the State in this case has had multiple opportunities to support the restitution award, *i.e.*, prior to sentencing when it made its initial request, at the sentencing hearing, at the restitution hearing, and after the restitution hearing during the three-week extension allowed by the district court for filing additional evidence. Under these facts, providing the State with yet another opportunity to get it done right would be improper. Accordingly, we vacate the order of restitution.

## IV.    CONCLUSION

We affirm Oxford's judgment of conviction, but vacate the order of restitution. The State's motion for restitution shall not be reconsidered when the case is remitted to the district court.


Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**

15